IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CT-3092-FL

| | | |
|---|---|---|
| LARRY EVANS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| S. SOMERS; ANDY WOOD;[1] CHAPLAIN HARRY GRUBBS;[2] ZEB HEATH;[3] AND ROBERT LEWIS, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

The matter comes before the court on the motion for summary judgment (DE # 30) pursuant to Federal Rule of Civil Procedure 56 filed by defendants Chaplain Harry Grubbs ("Grubbs"), Zeb Heath ("Heath"), Robert Lewis ("Lewis"), and Andy Wood ("Wood"). Plaintiff responded to defendants' motion with a motion for a continuance to conduct discovery (DE # 33). Defendants did not respond to plaintiff's motion. In this posture, the issues raised are ripe for adjudication. For the following reasons, the court grants defendants' motion and denies plaintiff's motion.

## STATEMENT OF THE CASE

On June 8, 2010, plaintiff, a state inmate incarcerated at Maury Correctional Institution,

---

[1] The defendant referred to by plaintiff as A. Wood has informed the court that his correct name is Andy Wood. The court hereinafter will refer to this defendant as Andy Wood.

[2] This defendant notified the court that his correct name is Zeb Heath. The court hereinafter will refer to this defendant as Zeb Heath.

[3] This defendant notified the court that his correct name is Harry Grubbs. The court hereinafter will refer to this defendant as Harry Grubbs.

brought this action pursuant to 42 U.S.C. § 1983, against the above-stated defendants as well as S. Somers ("Somers"). Plaintiff alleged defendants violated his rights pursuant to the Free Exercise Clause of the First Amendment to the United States Constitution. He also asserts that he was wrongfully disciplined for engaging in Ghusl, a religious ritual.

On August 8, 2011, Grubbs, Heath, Lewis, and Wood filed a motion for summary judgment, arguing that plaintiff is unable to establish a constitutional violation. Alternatively, defendants assert the defense of qualified immunity. Plaintiff responded to defendants' motion and requested an extension of time to conduct discovery. The court subsequently dismissed, without prejudice, plaintiff's claim against Somers for failure to obtain service on Somers within the one hundred twenty (120) day time period required by Federal Rule of Civil Procedure 4(m).

## STATEMENT OF FACTS

The facts seen in the light most favorable to plaintiff are as follows. On Friday, June 12, 2009, at both 9:05 p.m. and 11:00 p.m., Somers, a corrections officer, observed plaintiff in his cell "naked with legs open and [] butt facing the window." Compl. p. 3. Plaintiff again was observed in the same position the next day at approximately 12:45 p.m. Heath Aff.[4] Ex. C. Plaintiff subsequently was charged with committing two B-6 disciplinary violations, for "[c]ommit[ting], solicit[ing] or incit[ing] others to commit any sexual act or indecently expose oneself, or touch the sexual or other intimate parts of oneself or another person for the purpose of sexual gratification[.]" Id. Ex. B, C.

On July 1, 2009, Heath, a disciplinary hearing officer ("DHO"), conducted a disciplinary hearing for plaintiff's first B-6 charge. Id. ¶ 4. At the hearing, plaintiff pleaded not guilty and

---

[4] Heath submitted an affidavit in support of defendants' motion for summary judgment.

2

explained that he was observed nude on Friday, June 12, 2009, because his Muslim faith required him to purify or wash his body before prayer.[5] Id. ¶ 5 and Ex. B p. 3. After hearing plaintiff's explanation, Heath contacted Grubbs, the chaplain at Maury, as a defense witness to obtain additional information regarding policies relating to Islamic rituals. Heath Aff. ¶ 6.

Grubbs informed Heath that the Islamic faith requires Muslims to engage in Ghusl,[6] or ceremonial washing, prior to Jumah prayer which is held at Maury on Fridays at 1:30 p.m. Grubbs Aff.[7] ¶ 5. The North Carolina Department of Correction ("DOC") has a policy which permits Ghusl between sunset on Thursday and the beginning of Jumah prayer on Friday at 1:30 p.m.[8] Id. ¶ 7. Based upon the information from Grubbs and the evidence presented, Heath determined that plaintiff's nudity on June 12, 2009, did not occur within the DOC's approved time for Ghusl. Accordingly, Heath found plaintiff guilty of the B-6 charge. Heath Aff. ¶ 8. As a result, plaintiff was sentenced to restrictions on his inmate trust account as well as, forty-five (45) days of disciplinary segregation, forty (40) hours of extra duty, and one hundred twenty (120) days of loss of visitation and telephone privileges. Id. ¶ 9. Plaintiff was provided a copy of the offense and disciplinary report, the record of hearing, and an appeal form. Id. ¶ 10.

On July 1, 2009, Heath conducted a second disciplinary hearing for plaintiff's June 13, 2009, B-6 charge. Id. ¶ 11. Plaintiff became loud and argumentative at the beginning of his second

---

[5] Plaintiff states in a grievance attached to his complaint that he engaged in Ghusl because he had urinated and defecated on himself. Compl. Attach. Heath states that plaintiff did not state that he urinated on himself at his hearing. Heath. Aff. ¶ 5.

[6] Ghusl requires a complete bath. Grubbs Aff. ¶ 5.

[7] Grubbs submitted an affidavit in support of defendants' motion for summary judgment.

[8] The DOC makes special provision for Ghusl during Ramadan because of early mealtime. Grubbs Aff. ¶ 7. Ramadan was not being observed on June 12, 2009 or June 13, 2009. Id. ¶ 9.

3

hearing and used profanity when Grubbs began explaining his charge and his appeal rights. Id. ¶ 12. Heath then instructed plaintiff to calm down and to stop using profanity, but plaintiff refused. Id. Heath explained to plaintiff that plaintiff would have to stop using profanity in order to remain at the hearing. Id. Plaintiff chose to leave the hearing. Id.

After plaintiff left the hearing, Heath entered a not guilty plea for plaintiff. Id. ¶ 13. Heath then reviewed plaintiff's written statement and other documentation that was submitted. Id. Plaintiff's written statement again explained that his Muslim faith required that he purify himself before each prayer. Id. ¶ 14. Plaintiff also explained that he was bent over in order to retrieve clothing and cosmetics from under his bunk. Id. Based upon the evidence presented and the previously obtained information regarding Islamic rituals, Heath found plaintiff guilty of the second B-6 charge. Id. ¶ 16. Plaintiff then was sentenced to restrictions on his inmate trust account, as well as, forty-five (45) days in disciplinary segregation, forty (40) hours of extra duty, and one hundred twenty (120) days loss of visitation and telephone privileges. Id. ¶ 17. Plaintiff was provided a copy of the offense and disciplinary report, the record of hearing, and an appeal form. Id. ¶ 18.

## DISCUSSION

A.  Motion for Continuance

Before addressing defendants' motion for summary judgment, the court considers plaintiff's request for a continuance to conduct discovery pursuant to Federal Rule of Civil Procedure 56(d) (formerly Rule 56(f)).[9] "As a general rule, summary judgment is appropriate only after 'adequate

---

[9] Effective December 1, 2010, the Supreme Court amended Rule 56, and what is now Rule 56(d) previously was codified as Rule 56(f). See Fed.R.Civ.P. 56, advisory committee's note ("The standard for granting summary judgment remains unchanged . . . Subdivision (d) carries forward without substantial change the provisions of former subdivision (f).").

4

time for discovery.'" Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996) (quotation omitted). Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Thus, Rule 56(d) allows a court to delay ruling on a motion for summary judgment if the nonmoving party requires discovery to identify "facts essential to justify the party's opposition." Crawford-El v. Britton, 523 U.S. 574, 599 n.20 (1998) (quotation omitted). However, "Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery." Young v. UPS, 2011 WL 665321, *20 (D.Md. Feb. 14, 2011). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" Scott v. Nuvell Fin. Servs., 2011 WL 2222307, *4 (D. Md. June 7, 2011). A non-moving party's Rule 56(d) request for discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 954 (4th Cir. 1995).

Here, the court entered a case management order on March 16, 2011, which allowed the parties until July 8, 2011, to conduct discovery. Plaintiff asserts that he needs additional time for discovery because he is in segregation. Plaintiff, however, filed his motion seeking additional time on August 22, 2011, after the expiration of the discovery period. Plaintiff does not provide any reason for failing to conduct discovery prior to the expiration of the time provided. Moreover, plaintiff does not assert that he requires discovery to identify facts essential to justify his opposition

5

to defendants' motion for summary judgment. Rather, he merely asserts a general request for discovery, which is not sufficient to allow a motion pursuant to Rule 56(d). Based upon the foregoing, plaintiff's motion for a continuance to conduct discovery pursuant to Rule 56(d) is DENIED.

B. Motion for Summary Judgment

1. Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

    a. Wrongful Disciplinary Convictions

Plaintiff challenges the validity of the disciplinary convictions for the B-6 charges he received for being nude in his cell on the grounds that he should have been charged with C-2 violations instead.[10] The record reflects that plaintiff was sentenced to disciplinary segregation, extra duty, and loss of privileges. To the extent plaintiff is arguing that because of a disciplinary action

---

[10] A C-2 disciplinary offense provides: "Direct toward or use in the presence of any State official, any member of the prison staff, any inmate, or any member of the general public, oral or written language or specific gestures or acts that are generally considered disrespectful, profane, lewd, or defamatory." Heath Aff. Ex. A.

6

he was placed into segregation or experienced the temporary loss of privileges, such disciplinary action did not create an atypical or significant hardship relative to the ordinary incidents of prison life which would afford him relief. See Sandin v. Conner, 515 U.S. 472, 483–86 (1995); Beverati v. Smith, 120 F.3d 500, 503–04 (4th Cir. 1997); Meachum v. Fano, 427 U.S. 215, 225 (1976). Likewise, if he is contending that his good-time credits were denied from a disciplinary hearing, the claim is not cognizable in a section 1983 action unless plaintiff first shows that his disciplinary sanction had been invalidated.[11] See, e.g., Edwards v. Balisok, 520 U.S. 641, 643–48 (1997); Heck v. Humphrey, 512 U.S. 477, 487 (1994).

If plaintiff is questioning the outcome of the disciplinary proceeding, "due process in this context [a prison disciplinary proceeding] requires only that there be some evidence to support the findings made in the disciplinary hearing." Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 457 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455–56. Thus, the court turns to whether there was "any evidence" to support the disciplinary hearing outcome.

In this case, plaintiff was charged with two B-6 violations for "[c]ommit[ting], solicit[ing] or incit[ing] others to commit any sexual act or indecently expose oneself, or touch the sexual or other intimate parts of oneself or another person for the purpose of sexual gratification[.]" Heath Aff. Ex. B, C. Plaintiff admits in his complaint that he was nude in his cell at the charged times. As a defense to the charges, plaintiff argued at the disciplinary hearing that he was engaged in Ghusl,

---

[11] It does not appear that plaintiff lost good-time credit for either disciplinary conviction.

a religious ritual, on the occasions he was observed nude. However, evidence submitted at plaintiff's disciplinary hearing reflected that plaintiff was not practicing Ghusl within the time period allowed by the DOC policy. The court finds that the record contains sufficient evidence to support the disciplinary board's finding of guilt on the B-6 charges. Thus, to the extent plaintiff claims defendants violated his due process rights, plaintiff's claim fails. Therefore, defendants are entitled to summary judgment for this claim, and the claim is DISMISSED without prejudice.

      b.    First Amendment

Defendants assert the defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects government officials "where the law is unsettled or murky." Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir. 2001). The test is whether the act was clearly forbidden, not whether in hindsight the action was wrongful. Id. at 286. The Fourth Circuit has recognized a two--pronged qualified immunity inquiry:

> First, we must decide whether a constitutional right would have been violated on the facts alleged. Next, assuming that the violation of the right is established, courts must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right.

Bailey v. Kennedy, 349 F.3d 731, 739 (4th Cir. 2003) (internal quotations omitted). With respect to the second step, "[t]he relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was lawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001), receded from by Pearson v. Callahan, 555 U.S.223 (2009). A court has discretion to decide which step of the two--prong test

8

to analyze first. Pearson, 555 U.S. at 236.

The court first focuses on whether plaintiff established a constitutional violation. Plaintiff contends that defendants violated the Free Exercise Clause of the First Amendment to the United States Constitution by disciplining him for being nude in his cell while engaging in Ghusl, a prayer ritual for his Muslim faith. In response, defendants assert that the DOC has a regulation which allows Ghusl between sunset on Thursday and the beginning of Jumah prayer on Friday at 1:30 p.m. Grubbs Aff. ¶ 7; Ex. A, pp. 1-2. Further, the DOC Religious Practices Manual provides that Ghusl is required for Jumah prayers only, and that Wuda, or the washing of the face and hands, is required for other prayers. Grubbs Aff. ¶¶ 5, 8; Ex. A, p. 1. Plaintiff was disciplined for engaging in Ghusl outside of the time period allowed by the DOC for this ritual.

Generally, an inmate has a First Amendment right to free exercise of his religion. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). Prison officials may, however, restrict an inmate's constitutional rights. See Turner v. Safley, 482 U.S. 78, 89 (1987). In Turner, the Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Id. at 89. To determine whether a regulation relied upon by a defendant is constitutionally permissible, the court must consider the following factors: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; and (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally. Id. at 89-90. When applying these factors, the court must give considerable deference to prison officials' administrative decisions. See Bell v. Wolfish, 441 U.S. 520, 547

9

(1979); Taylor v. Freeman, 34 F.3d 266, 268 (4th Cir. 1994) ("[A]bsent the most extraordinary circumstances, federal courts are not to immerse themselves in the management of state prisons . . . ."). An inmate bears the burden of proving that a prison regulation is unconstitutional. See Hause v. Vaught, 993 F.2d 1079, 1082 (4th Cir. 1993).

The court examines the facts pursuant to Turner. First, there is a valid, rational connection between the DOC's policy regarding the limitation of Ghusl to the time period proceeding Jumah because Ghusl only is required for this type of prayer. Plaintiff has not presented any evidence to the contrary. Second, plaintiff is allowed to engage in Ghusl during the appropriate time periods. Finally, allowing plaintiff to engage in full-body ritualistic washing at any time would be disruptive in the prison setting and tax water resources. See Sims v. Hudson, No. CV209-26, 2010 WL 597811, *4 (S.D. Ga. Feb. 17, 2010) (finding no First Amendment violation where plaintiff presented no evidence that the prison's shower schedule interfered with Ghusl). Courts "should be particularly deferential" to prison officials' methods for maintaining security. See Turner, 482 U.S. at 90. Accordingly, the DOC's policy requiring that Ghusl be restricted to the time period proceeding Jumah does not violate plaintiff's constitutional rights under the Free Exercise Clause.[12] Because plaintiff has failed to allege the deprivation of a constitutional right, defendants are entitled to qualified immunity.

    c.    Defamation

Plaintiff contends that his convictions for the B-6 offenses were defamatory. However, neither slander or defamation constitutes a basis upon which relief may be granted under § 1983.

---

[12] Plaintiff alleges that Grubbs informed Heath that plaintiff was not allowed to make Ghusl until Ramadan. However, the evidence in the record demonstrates otherwise. Grubb Aff. ¶¶ 5-9.

Case 5:10-ct-03092-FL Document 35 Filed 02/17/12 Page 10 of 11

Solomon v. Dixon, 724 F. Supp 1193, 1197 (1989), aff'd, 904 F.2d 701 (4th Cir. 1990) (citing Paul v. Davis, 424 U.S. 693 (1976)). Accordingly, to the extent plaintiff alleged a defamation claim against defendants, this claim too is without merit.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for a continuance to conduct discovery (DE # 33) is DENIED. However, the motion for summary judgment (DE # 30) filed by Grubbs, Heath, Lewis, and Wood is GRANTED, and plaintiff's claim challenging the validity of his disciplinary conviction is DISMISSED without prejudice. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 7th day of February, 2012.

_____
LOUISE W. FLANAGAN
United States District Judge